**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| THE CNA CORPORATION, | ) | |
| | ) | No. 07-858C |
| Plaintiff, | ) | |
| | ) | (Judge Horn) |
| v. | ) | |
| | ) | |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY TO THE CNA CORPORATION'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S APPLICATION FOR BID PREPARATION AND PROPOSAL COSTS**

Pursuant to RCFC 7.2(b), defendant, the United States, respectfully submits this reply to CNA Corporation's ("CNAC") response in opposition to our motion to strike plaintiff's application for bid preparation and proposal costs as untimely.

**I. Plaintiff's Application For Bid Preparation And Proposal Costs Is Nothing More Than An Untimely Motion Under RCFC 59**

CNAC argues that there has been no "final appealable judgment under RCFC 54 and 58, because neither document identified the quantum of damages (or a mechanical method for determining the quantum of damages)." CNAC Opp. at 3. Thus, according to CNAC, "this Court continues to have jurisdiction over this case, including CNAC's application for bid preparation and proposal costs." Id. CNAC's conclusion, however, rests on a faulty premise regarding the appealability of this Court's order and entry of judgment in this case, in addition to an inaccurate reading of RCFC 54.

CNAC is correct that RCFC 54 defines "[j]udgment" to "include[] a decree and any order from which an appeal lies." RCFC 54(a) (emphasis added). CNAC assumes, however, that the Court of Appeals for the Federal Circuit has appellate jurisdiction only over a "final decision" of

this Court. CNAC Opp. at 4. That is not the case. For example, in PGBA v. United States, 60 Fed. Cl. 567 (2004), the bid protestor asked this Court to "enter final judgment in this matter so that an immediate appeal can be pursued." 60 Fed. Cl. at 570. The Court thereafter entered judgment, pursuant to RCFC 54(b), "as a prudential measure to ensure that the Court's decision and order are immediately appealable." Id. The Court noted, however, that "PGBA already possesses the ability to appeal the Court's denial of injunctive relief" without the RCFC 54(b) judgment. Id. In particular, the Court explained:

> The Court's Order and Opinion . . . , in conjunction with denial of PGBA's first motion for reconsideration, was an order denying PGBA's request for injunctive relief. Such an order may be appealed on an interlocutory basis to the Court of Appeals for the Federal Circuit. See 28 U.S.C. §§ 1292(c)(1), 1295(a)(3); PIN/NIP, Inc. v. Platte Chemical Co., 304 F.3d 1235, 1242 (Fed. Cir. 2002) (exercising jurisdiction pursuant to 28 U.S.C. §§ 1292(a)(1) and 1292(c)(1) to review a district court's grant of a permanent injunction in patent case). See also National R.R. Passenger Corp. v. ExpressTrak, L.L.C., 330 F.3d 523, 527 (D.C. Cir. 2003) ("Although [Section 1292(a)(1)] is typically invoked to appeal preliminary injunctions, it can be invoked to appeal permanent injunctions that are interlocutory in nature."); Perfect Fit Indus., Inc. v. Acme Quilting Co., 618 F.2d 950, 952 n.4 (2d Cir.1980) (exercising jurisdiction under Section 1292(a)(1) to review dismissal of complaint requesting permanent injunction, even though counterclaims remained pending).

Id.

The Court in PGBA was correct: according to the Federal Circuit's decision in PIN/NIP, "28 U.S.C. § 1292(a)(1) . . . in combination with 28 U.S.C. § 1292(c)(1), grants [the Federal Circuit] 'jurisdiction of appeals from interlocutory orders of the district courts ... granting, continuing, modifying, refusing or dissolving injunctions.'" 304 F.3d at 1242 (quoting 28 U.S.C. § 1292(a)(1), and citing 28 U.S.C. § 1292(c)(1) for the proposition that the latter statute "grant[s] us specifically jurisdiction pursuant to section (a) when the subject matter of the case falls within one of the categories enumerated in 28 U.S.C. § 1295"). Indeed, the Federal Circuit

held that "[t]he district court's grant of a permanent injunction against PIN/NIP . . . brings this appeal squarely within the confines of § 1292(a)(1)." 304 F.3d at 1242 (emphasis added) (citing King Instrument Corp. v. Otari Corp., 814 F.2d 1560, 1562 (Fed. Cir.1987), wherein the Federal Circuit exercised "jurisdiction over an appeal pursuant to § 1292(a)(1) where the district court entered a permanent injunction and reserved for a later date a determination of damages").

In this case, the Court's January 7, 2008 judgment was appealable because it "partially award[ed] plaintiff the [permanent] injunctive relief it seeks," instructing "[t]he agency [to] pursue a reconsideration of the ethics decision" at issue in the case. Order of Judgment (January 7, 2008). Accordingly, under RCFC 54, the Court's judgment constituted "a decree . . . from which an appeal" lies, and CNAC, "to alter or amend [that] judgment" was required to, but did not, file a motion to do so "no later than 10 days after entry of the judgment." RCFC 59(e). In that regard, CNAC does not dispute that its application for bid preparation and proposal costs is untimely under RCFC 59, but only that the Rule applies as we have explained it.

A number of cases, however, confirm that RCFC 59 applies here. For example, in McCowan v. Sears, Roebuck, and Co., the court of appeals considered whether a notice of appeal filed by defendants-appellants "was a nullity since it was filed while a Fed. R. Civ. P. 59(e) motion to alter or amend the judgment was pending." 908 F.2d 1099, 1102 (2d Cir.), cert. denied, 498 U.S. 897 (1990). Defendants-appellants in that case argued "that the order appealed from was not a final judgment disposing of the litigation," id. at 1103, and thus their motion should not be considered as having been filed under Rule 59(e). See id. at 1102. Indeed, in McCowan, in contrast to the case here, "no separate [judgment] document was filed pursuant to Rule 58." Id. The court rejected the appellants' argument, holding that "neither [Federal] Rule

[of Appellate Procedure] 4(a)(4) nor Rule 59(e) are confined to final judgments." Id. at 1103. Rather, "[t]hey apply to any 'judgment,' defined in Fed. R. Civ. P. 54(a) to include 'a decree an any order from which an appeal lies.'" Id. (emphasis added) (concluding that "[s]uch an order includes an interlocutory order like the one at issue here, made appealable by statute"); cf. Jurgens v. McKasy, 905 F.2d 382, 385 (Fed. Cir. 1990) (holding that "an outstanding Rule 59(e) motion renders all prior notices of appeal of no effect, whether or not there is any nexus between the subject matter of the motion and the subject matter of the appeal"(emphasis added)).

Likewise, in Rodriguez v. Banco Central, 790 F.2d 172 (1st Cir. 1986), the court opined that defendants' motion for reconsideration "fits within Rule 59, leading [the court] to believe that the notice of appeal was timely with respect to the original June 4 order." 790 F.2d at 176. Plaintiffs argued, however, that although "defendants' motion for reconsideration was made within ten days of the district court's June 4 order holding class certification in abeyance, . . . Rule 59(e) has no application here because the district court's June 4 order was not a 'judgment.'" Id. The court of appeals rejected plaintiffs' argument in that case, explaining that "the term 'judgment' is broadly defined in the federal rules as including 'a decree and any order from which an appeal lies.'" Id. (emphasis in original) (quoting Fed. R. Civ. P. 54(a)). Accordingly, the court explained that "if the order entered on June 4 . . . were an appealable order . . . , it would technically be a 'judgment,' and defendants' timely motion for reconsideration would delay the running of the 30-day appeal period . . . ." Id. at 176-79 (emphasis in original) (concluding, however, that the order in question was not appealable).

Moreover, in Osterneck v. Whinney, 489 U.S. 169 (1989), the Supreme Court held that "the Court of Appeals was correct to conclude that [a] postjudgment motion for discretionary

prejudgment interest constitutes a motion to alter or amend the judgment under Rule 59(e)." 489 U.S. at 175. In so holding, the Court reasoned that "unlike attorney's fees, which at common law were regarded as an element of costs and therefore not part of the merits judgment, . . . prejudgment interest traditionally has been considered part of the compensation due plaintiff." Id. Like prejudgment interest, bid preparation costs properly are "considered part of the compensation due plaintiff," id., for an agency's having failed to consider fairly a plaintiff's proposal or bid. See 28 U.S.C. 1491(b)(2) ("any monetary relief shall be limited to bid preparation and proposal costs").

Under Osterneck, CNAC's application is an untimely 59(e) motion that must be denied. For example, in Keith v. Truck Stops Corp. of America, 909 F.2d 743 (3d Cir. 1990), the court considered whether a trial court's second order adding prejudgment interest constituted a new appealable judgment. The court answered that question in the affirmative: "Given the substantial increase in the judgment by the district court's order awarding prejudgment interest, we have no doubt that such a change was substantive and was sufficient to produce a new judgment." 909 F.2d at 746. The court next considered, however, "whether the district court had power to grant plaintiffs' motion to add prejudgment interest." Id. The court answered that second question in the negative: "We need not tarry on the issue of which rule governs because the Supreme Court held, in Osterneck . . . , that a post-judgment motion for discretionary prejudgment interest constitutes a rule 59(e) motion to alter or amend the judgment, which must be served within 10 days." Id. (emphasis added); see also Osterneck, 489 U.S. at 176 n.3 ("We do not believe the result should be different where prejudgment interest is available as a matter of right."); Crowe v. Bolduc,365 F.3d 86, 92-93 (1st Cir. 2004) ("Following Osterneck's lead, we conclude that

Rule 59(e) is the proper procedural vehicle for motions seeking to revise a judgment to include an initial award of prejudgment interest (whether mandatory or discretionary).”).

Osterneck, in sum, sets out a “‘bright-line rule’ . . . that a motion for prejudgment interest implicates the merits of the district court’s judgment” regardless of whether such interest is mandatory or discretionary. 489 U.S. at 176 n.3. Accordingly, there is no difference between a case in which a court issues a judgment that explicitly awards discretionary interest – but fails to quantify the amount of such interest – and an otherwise appealable judgment that fails to specifically award prejudgment interest because it is mandatory. In either such case, a motion for prejudgment interest is one under Rule 59(e). Similarly, even if 28 U.S.C. 1491(b)(2) mandated the payment of bid and proposal costs to CNAC – which the statute does not – CNAC’s failure to pursue an amended judgment, pursuant to Rule 59(e), within 10 days of the court’s entry of judgment on January 7, 2008, would be fatal to its application now pending. That the court, instead of a statute, awarded bid preparation and proposal costs, in some general sense, to CNAC is of no moment because Osterneck teaches that the source of legal entitlement is immaterial.

CNAC’s attempt to distinguish Herzog Contracting Corp. v. McGowen Corp., 976 F.2d 1062 (7th Cir. 1992), is unavailing. We rely on that case, not for its holding regarding what constitutes a “final judgment,” see 976 F.2d at 1064-65 – that question, as demonstrated above, is not dispositive here – but rather with respect to what constitutes a motion under Rule 59. According to Herzog, CNAC’s application for bid preparation costs properly is considered as a Rule 59(e) motion. See 976 F.2d at 1065-66; Western Industries, Inc. v. Newcor Canada Ltd., 709 F.2d 16 (7th Cir. 1983) (“It is unusual for the appellee – the winner below – to be filing a

Rule 59(e) motion, but by no means unheard of. A prevailing plaintiff may, for example, want the judge to increase the amount of the judgment . . . ."); Lac Du Flambeau Band of Lake Superior Chippewa Indians v. State of Wis., 957 F.2d 515, 516-17 (7th Cir. 1992); U.S. v. Gargano, 826 F.2d 610, 611 (7th Cir. 1987) (explaining that a request should be treated as a Rule 59(e) motion where, "if granted[,] [it] would result in a substantive alteration in the judgment rather than just in a correction of a clerical error or in a purely procedural order such as one granting an extension of time within which to file something").

CNAC primarily relies upon two Federal Circuit cases: Teller Envt'l Sys., Inc. v. United States, 802 F.2d 1385, 1388 (Fed. Cir. 1986), and AAA Eng'g & Drafting, Inc. v. Widnall, 129 F.3d 602, 604 (Fed. Cir. 1997). Both cases are inapposite here because they deal only with what constitutes a "final decision of the [ASBCA]" and under 28 U.S.C. § 1291. 802 F.2d at 1387-88 (citing Liberty Mutual Ins. Co. V. Wetzel, 424 U.S. 737, 744 (1976), for the proposition that "the issue of damages and liability are a single claim and that both must be resolved to constitute a final decision within the meaning of 28 U.S.C. § 1291"); see also AAA Eng'g, 129 F.3d at 604 ("This case is on all fours with Teller."). Thus, CNAC mistakenly assumes that the issue presented by our motion to strike is whether the January 7, 2008 Order of Judgment constitutes a "final decision" or "final judgment" under 28 U.S.C. § 1291; rather, the correct issue here is whether that judgment constituted an "order from which an appeal lies." RCFC 54(a).

Because this "court's grant of a permanent injunction" against the Government was appealable as "squarely within the confines of § 1292(a)(1)," see 304 F.3d at 1242, the court's January 7, 2008 Order of Judgment constituted a "judgment" under RCFC 54, and CNAC's application for bid preparation costs should be treated as an untimely motion under RCFC 59.

See Lewis v. Tobacco Workers' Int'l Union, 577 F.2d 1135, 1138-39 (4th Cir. 1978) (concluding that this case "is an appeal from the granting of an injunction under § 1292(a)," and distinguishing Liberty Mutual as a case in which the court "merely had found a violation of the act and had not ordered the defendants to take, or refrain from, any action").

## II. Assuming That CNAC's Application For Bid Preparation And Proposal Costs Is Not Time-Barred, CNAC Must Resubmit Its Application To Claim Only Additional Costs Expended In Submitting CNAC's Response To The 2008 RFP

CNAC does not contest our recitation of the facts of this case. See Def. Mot. at 1-4. The procedural history of this case is significant here because the Government's position is that a successful bid protestor may receive injunctive relief or bid preparation and proposal costs, but not both. Thus, where, as here, CNAC initially failed to obtain the full permanent injunctive relief it sought, due to its own delay, but now has been permitted to submit a proposal for the very contract award that was the subject of its first bid protest in the above-captioned case, CNAC should not be permitted to collect its bid preparation costs as well. See The CNA Corp. v. United States, – Fed. Cl. –, 2008 WL 1956260, *4 (April 30, 2008).

The bid preparation and proposal costs remedy has its genesis in Heyer Products Co. v. United States, 140 F. Supp. 409 (Ct. Cl. 1956). Indeed, Heyer Products was the first case to recognize a bid protest cause of action, holding that bidders enter into an implied contract with the government to have their bids fairly considered, id. at 412, the breach of which entitles a plaintiff to recover its bid expenses. Id. at 413-14; see also Keco Indus., Inc. v. United States, 428 F.2d 1233, 192 Ct. Cl. 773 (1970). Those early cases confirm, however, that "aggrieved bidders have the right to require the Government to enforce the statutes and regulation fairly and honestly, either by seeking equitable relief in the Federal district courts or by suing for money

damages here [in the Court of Claims]." Continental Business Enterprises, Inc. v. United States, 452 F.2d 1016, 1022 (Ct. Cl. 1971) (explaining that "[t]he Heyer rule was extended in Keco to give aggrieved bidders a damages remedy in lieu of the equitable remedies available in the Federal district courts" (emphasis added)).

The Tucker Act, as amended by the Administrative Dispute Resolution Act of 1996 (ADRA), both "enlarg[ed] the Court of Federal Claims' jurisdiction over bid protests to post-award matters, and extend[ed] the court's equitable powers." Biltmore Forest Broadcasting FM, Inc. v. United States, – Fed. Cl. –, 2008 WL 253029, *13 (Jan. 25, 2008). However, "[t]he limitation of any monetary relief to 'bid preparation and proposal costs' was maintained." Id. (quoting 28 U.S.C. § 1491(b)(2), and noting that "Federal district court jurisdiction over bid protests was terminated as of January 1, 2001"). In essence, although ADRA obviated the need for an unsuccessful bidder to base its protest "on a breach of an implied contract to consider bids fairly," the statute preserved "the same cause of action previously considered under the rubric of a breach of an implied contract." Id. (emphasis added). Accordingly, in the Court of Federal Claims, an award of bid preparation costs remains an alternative remedy to equitable relief.

In Beta Analytics Int'l, Inc. v. Untied States, 75 Fed. Cl. 155 (2007), for example, the court observed that, "[e]ven in a post-award context, injunctive relief may often be crafted to provide for the reevaluation of the submitted proposals[,]" assuming, of course, that there was "arbitrary and capricious procurement activity." Id. at 159 (explaining that an agency "reevaluation restores to a [successful protestor] its substantial chance to receive the contract award"). Thus, such reevaluation "[t]ypically . . . would also eliminate the basis for an award of bid and preparation and proposal costs, as the investment in the proposal is no longer a 'needless

expense,' . . . and the bidder may yet see the fulfilment of the promise of 'fair and impartial consideration' which 'induced it to spend its money to prepare its bid.'" Id. (quoting Heyer Products, 135 Ct. Cl. at 69-71). In other words, injunctive and monetary relief are alternative bid protest remedies. Cf. eBay Inc. v. MercExchange, L.L.C., -- U.S. --, 126 S.Ct. 1837, 1839 (2006) (reviewing injunctive relief factors and holding that "plaintiff must demonstrate . . . that remedies available at law, such as monetary damages, are inadequate to compensate for [its] injury").

Accordingly, CNAC should not receive both its proposal preparation costs and injunctive relief. In contrast, should the court's award of both forms of relief be permitted to stand, CNAC essentially will have obtained a double-recovery in that it will receive both monetary relief and the opportunity to have its proposal considered (this time, under the 2008 RFP). Having been reinstated for consideration in the procurement process, CNAC should be required to bear the costs of participating in this process, like any competitor. As we explained in our motion to strike, see Def. Mot. at 7-8, "because CNAC cannot collect bid preparation costs expended in the submission of a proposal that is fairly considered by the Government, should CNAC resubmit its proposal in response to the new NCS RFP, CNAC will have obtained all the relief to which it is putatively entitled under 28 U.S.C. § 1491." CNAC has submitted a proposal in response to the 2008 RFP.

Thus, to the extent that the full, permanent injunctive relief CNAC sought in the above-captioned case was not available to it, see CNAC Opp. at 7, CNAC has only itself to blame, due to its delay in seeking relief from the court, and in failing to move for a preliminary injunction staying the awardees' performance. CNAC cannot dispute that its failure to obtain the full

injunctive relief it originally sought here was due to its failure to act expeditiously. In particular, CNAC does not dispute either: (1) that "[r]ather than immediately filing a bid protest with the agency, the GAO, or the Court, CNAC elected to attempt to resolve its dispute informally by meeting with NIH counsel"; or (2) that "CNAC thus did not file its bid protest in the court until December 6, 2007, two months after the October 5, 2007 notification of contracts awards, which had an effective date of September 28, 2007." Def. Mot. at 2. Nor, for that matter, does CNAC take issue with our argument that CNAC was mistaken in asserting that it "could not have filed an agency or GAO protest, due to an alleged delay in the debriefing date." Id. at n.2.

Finally, CNAC concedes, as it must, that it "did not seek to stay the performance of any of the awardees, but rather to prevent NIH from awarding any NCS contract related to the Montgomery County, Maryland study center." Id. at 3 (explaining that "CNAC's motion for preliminary injunctive relief was rendered moot when the agency indicated that it [would not] mak[e] any additional awards under the [2007] RFP"); see PGBA, LLC v. United States, 60 Fed. Cl. 196, 221 (2004) (holding plaintiff's arguments for permanent injunctive relief "are undermined by the fact that [it] elected not to seek a [preliminary] injunction against the implementation of the [contract at issue]"), aff'd, 389 F.3d 1219, 1229 (Fed. Cir. 2004) (noting that the court below "considered PGBA's failure to seek a preliminary injunction as a factor weighing against a grant of injunctive relief").

If this Court nonetheless determines that CNAC should receive its bid preparation and proposal costs, CNAC, at most, should be permitted to recoup only the additional costs it incurred (to update its 2007 proposal) in submitting a proposal in response to the 2008 RFP.

## CONCLUSION

For the reasons stated above, we respectfully request that this Court strike CNAC's April 4, 2008 application for bid preparation and proposal costs.

Respectfully submitted,

GREGORY G. KATSAS
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Deborah A. Bynum
DEBORAH A. BYNUM
Assistant Director

s/ Matthew H. Solomson
MATTHEW H. SOLOMSON
Trial Attorney, Commercial Litigation Branch
Civil Division, United States Department of Justice
1100 L Street, N.W.
Washington, DC 20530
Tele: (202) 305-3274
Fax: (202) 514-8624

Dated: May 27, 2008

Attorneys for Defendant