# In the United States Court of Federal Claims

**No. 07-858C**
**Filed: August 6, 2008**

| | | |
|---|---|---|
| * * * * * * * * * * * * * * | | |
| **THE CNA CORPORATION,** | * | |
| | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Bid Protest; Motion to Strike; Bid Preparation and Proposal Costs; Finality; RCFC 59 and 60.** |
| | * | |
| **UNITED STATES,** | * | |
| | * | |
| | * | |
| **Defendant.** | * | |
| | * | |
| * * * * * * * * * * * * * * | | |

**Alex D. Tomaszczuk**, Pillsbury Winthrop Shaw Pittman LLP, McLean, Virgina, for the plaintiff. Of counsel, **Daniel S. Herzfeld**, Pillsbury Winthrop Shaw Pittman LLP, McLean, Virginia and **Caroline L. Plant**, Pillsbury Winthrop Shaw Pittman LLP, Los Angeles, California.

**Matthew H. Solomson**, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for the defendant. With him were **Jeffrey S. Bucholtz**, Acting Assistant Attorney General, **Jeanne E. Davidson**, Director and **Deborah A. Bynum**, Assistant Director, Commercial Litigation Branch.

## O R D E R

**HORN, J.**

On January 3, 2008, this court issued an Order partially awarding plaintiff the injunctive relief it sought by vacating the agency's initial adverse ethics decision on former employee, Dr. Sarah Friedman's participation as a principal investigator for a proposal submitted by CNA Corporation (CNAC) to a Department of Health and Human Services (HHS) National Institute of Health (NIH) solicitation. The Order also awarded plaintiff CNAC bid preparation costs. CNA Corp. v. United States, Case No. 07-858C, Order at 3 (Fed. Cl. Jan. 3, 2008) (hereinafter CNAC I). Subsequently, the Clerk of the Court issued a Judgment on January 7, 2008, vacating the agency ethics decision,

directing the agency to reconsider its ethics position, and awarding plaintiff bid preparation costs. On April 4, 2008, one day after the government withdrew its appeal of this court's decision in CNAC I, which defendant had filed in the United States Court of Appeals for the Federal Circuit, plaintiff filed its application for bid preparation and proposal costs, asking this court to make a quantum determination of $381,817.89. On April 17, 2008, defendant chose not to respond to plaintiff's calculation and support for the amount of damages sought, but filed a motion to strike plaintiff's entire application for bid preparation and proposal costs.

## FINDINGS OF FACT

Plaintiff, CNAC, filed a post-award bid protest in CNAC I, based on an HHS Request for Proposals No. NIH-NICHD-NCS-07-11 (2007 RFP), for the Montgomery County, Maryland Study Center location of the National Children's Study. The National Children's Study is a long-term study to assess the effect of environmental exposures on children's health and development from before birth to age 21. See Children's Health Act of 2000, Pub. L. No. 106-310, § 1004, 114 Stat. 1101, 1130-31 (2000). In 2005, the contract for the NCS Coordinating Center was awarded, along with contracts for seven of the 105 projected study locations. In 2007, awards were made for 22 additional area study contracts, although no award was made for the Montgomery County, Maryland location. Although not determinative regarding the bid preparation and proposal cost claim and the defendant's motion to strike addressed in this opinion, a 2008 solicitation for additional study locations was issued by HHS with additional contract awards contemplated. CNAC, which had bid for a contract for Montgomery County, Maryland pursuant to the 2007 solicitation, generating the bid protest at issue in this Order, also submitted a bid for the Montgomery County, Maryland location in response to the 2008 solicitation. To date, no awards have been made on the 2008 solicitation.[1]

CNAC's current request for bid preparation and proposal costs was generated by the court's Order after CNAC filed its successful post-award bid protest on the 2007 solicitation, (No. 07-858C) (CNAC I). CNAC filed the post-award bid protest when HHS refused to award one of the National Children's Study contracts to CNAC pursuant to the 2007 solicitation. The HHS refusal was based on CNAC's proposal of Dr. Sarah Friedman as its principal investigator. On October 5, 2007, HHS sent a letter to CNAC notifying it that CNAC's proposal was not selected for award. The letter stated: "This letter is to notify you that your proposal, submitted in response to the above subject RFP, was not selected for contract award." As substantiation for this decision, the defendant submitted to the court a series of e-mails concluding that Dr. Friedman, a former NIH employee and CNAC's proposed principal investigator for the Montgomery County, Maryland Study Contract, was barred from acting as a principal investigator on the 2007 contract, citing the post-employment restrictions of 18 U.S.C. § 207 (2000).

[1] After the 2008 solicitation was issued, CNAC submitted a second, this time, pre-award, protest in reference to the 2008 solicitation. CNAC, once again, prevailed on the issue of Dr. Friedman's disqualification from participation as the principal investigator on the project, this time following the issuance by HHS of an expanded ethics opinion. CNA Corp. v. United States, 81 Fed. Cl. 722, 733 (2008) (hereinafter, CNAC II).

The agency indicated that but for the October 5, 2007, ethics decision and Dr. Friedman's resultant disqualification, CNAC was in line for a 2007, Montgomery County award. After reviewing the record, including the original ethics decision issued by HHS on October 5, 2007, the court issued the Order in CNAC I, in favor of the plaintiff. In relevant part, the Order stated:

> [D]efendant acknowledged and the court concludes that, in rendering the adverse ethics decision on Dr. Sarah Friedman's proposed participation as plaintiff's Principal Investigator for the contract at issue, which is at the heart of this case, the agency did not provide the specific statutory basis for its decision; the agency did not consider the impact of the pertinent regulations and other pertinent matters before making its ethics decision; the agency did not provide a reasonable basis for its adverse ethics decision; the administrative record, compiled and submitted by the agency, is inadequate to have supported a full and complete ethics review of Dr. Friedman; and the agency did not afford plaintiff a meaningful opportunity to respond to its adverse ethics ruling. The court concludes that the agency's adverse ethics decision on Dr. Friedman's proposed participation in the contract at issue is arbitrary and without apparent rational basis.
>
> * * *
>
> [T]he weight of the admissions by defendant as to the inadequacy of the decision making process, the filed administrative record complied by the defendant and the absence in the filed record of sufficient indication or documentation to support proper administrative review, directs the court to a finding that the agency, NIH [National Institute of Health], acted arbitrarily and capriciously when it found Dr. Friedman ineligible to participate as the Principal Investigator in a contract award to the plaintiff. The agency conducted an inadequate review of the important ethics issues presented and failed to properly document even the minimal review steps it undertook.

CNAC I, Case No. 07-858C, Order at 1, 2-3.

The Order further stated:

> Dr. Friedman, and plaintiff, deserve a properly conducted ethics review by the agency. The impact of the decision to bar Dr. Friedman from participation as plaintiff's Principal Investigator is especially compelling given statements made by government officials, and acknowledged by defendant's counsel and agency personnel in the hearings before the court, that plaintiff CNA Corporation had been recommended for an award for the Montgomery County [Maryland] study contract, pending only the issue of the eligibility of Dr. Friedman as plaintiff's Principal Investigator, given her previous employment at NIH.

CNAC I, Case No. 07-858C, Order at 3. The court vacated the agency's initial, adverse ethics decision on Dr. Friedman, and directed the agency to reconsider its decision as follows:

> Therefore, the court partially awards plaintiff the injunctive relief it seeks, vacates the agency's initial adverse ethics decision on Dr. Friedman, and awards the plaintiff CNA Corporation bid preparation costs. The agency shall pursue a reconsideration of the ethics decision and, at a minimum, shall consider the issues raised by the applicable statutory and regulatory sections, including subsections of 18 U.S.C. § 207 (2000) and 5 C.F.R. § 2637 (Jan. 1, 2007), not previously and properly considered.

CNAC I, Case No. 07-858C, Order at 3.

The government filed a notice of appeal in CNAC I on February 29, 2008. The government subsequently filed a motion to withdraw its appeal of CNAC I, which was granted by the United States Court of Appeals for the Federal Circuit on April 3, 2008. The next day, April 4, 2008, plaintiff filed its detailed application for bid preparation and proposal costs with this court.

In response to the court's January 3, 2008 Order in favor of the plaintiff, (CNAC I), the HHS contracting officer for the 2007 RFP, Elizabeth Osinski, issued a letter to CNAC on March 19, 2008, reaffirming her decision to exclude Dr. Friedman and, therefore, CNAC, from consideration for the 2007 study award. She also addressed the then prospective 2008 RFP for the National Children's Study:

> With respect to the forthcoming solicitation Reference-Number-NIH-NICHD–NCS-08-21 (2008 RFP), I advise you that the 2008 RFP does not materially differ from the 2007 RFP with respect to Dr. Friedman's eligibility under 18 U.S.C. § 207(a)(1) to serve as principal investigator. Accordingly, I would anticipate the same determination with respect to Dr. Friedman under the 2008 RFP as under the 2007 RFP.

Ms. Osinski enclosed with her letter to CNAC a 15-page memorandum, dated March 18, 2008, from Edgar M. Swindell, the HHS Designated Agency Ethics Official. The Swindell ethics opinion concluded that, if Dr. Friedman made the "communications and appearances" to the agency expected of the principal investigator position, she would be in violation of 18 U.S.C. § 207. Mr. Swindell indicated that "given the same facts and absent significant changes in OGE's [Office of Government Ethics] interpretation, we would expect to reach the same conclusions regarding Dr. Friedman's participation in a particular matter involving specific parties in relation to the fiscal year 2008 procurement."

The same day that contracting officer Osinski issued her letter to CNAC on Dr. Friedman's post-employment restrictions, March 19, 2008, the 2008 RFP was issued.

The 2008 RFP solicited proposals for NCS Study Centers, again including one for Montgomery County, Maryland in which CNAC was interested.

CNAC's second, this time pre-award, protest was filed in this court on April 8, 2008, (Case No. 08-249C), in response to the 2008 solicitation and the agency's revised ethics decision. In an opinion filed on April 30, 2008, the court determined that CNAC had standing to bring a pre-award bid protest on the 2008 solicitation. As noted above, the court also concluded, once again, that the decision to exclude Dr. Friedman and CNAC, this time based on the expanded March 18, 2008, HHS Swindell ethics opinion, was arbitrary. The court concluded that, despite being a longer treatment of the issue, the conclusion still was not well founded pursuant to the applicable statutes and regulations, given the particular facts of the case. CNAC II, 81 Fed. Cl. at 733. The current opinion does not address, nor has plaintiff to date requested, any costs related to CNAC II.

CNAC has submitted a detailed cost request for the bid preparation and proposal costs that were awarded to it in CNAC I, and has included hundreds of pages of supporting documentation with its request. CNAC partitions the bid preparation and proposal costs into three areas: labor, consultant fees, and direct costs. CNAC also notes that the amount sought is 2.65% of the bid price based on its 2007 proposal.

The government did not challenge or respond to the amount or type of costs requested as damages by CNAC but, rather, filed a motion to strike plaintiff's application for bid preparation and proposal costs. Defendant contends that the request is "untimely and unsupported by the Rules of the Court of Federal Claims." The government argues that the case, Case No. 07-858C (CNAC I), is closed pursuant to Rule 58 of the Rules of the Court of Federal Claims (RCFC), titled "Entry of Judgment," and asserts that "CNAC failed to cite any rule of this Court or other authority in support of its April 4, 2008 application for bid preparation and proposal costs." The government contends that this court should not allow both injunctive and monetary relief because CNAC has had the opportunity also to submit a proposal in response to the 2008 RFP, and that to allow recovery of bid preparation and proposal costs would constitute "double-recovery." Although still only addressing bid preparation costs for the 2007 solicitation, the government further requests that if the court finds for the plaintiff, any monetary determination should be limited to the "additional costs it incurred (to update its 2007 proposal) in submitting a proposal in response to the 2008 RFP."

CNAC responds by asserting that: "the Government's argument is incorrectly premised on the conclusion that this Court has already entered a final, appealable judgment. The Judgment entered by the Clerk of the Court on January 7, 2008 was not a final, appealable judgment under RCFC 54 and 58 because it merely stated the Government's liability for bid preparation costs but provided no quantum of damages (or any mechanical method for calculating the damages)."

## DISCUSSION

The issue before the court is whether plaintiff is entitled to bid preparation costs as a result of the decision in CNAC I, given that the court specifically awarded those costs to plaintiff in both the judge's January 3, 2008 Order and the January 7, 2008 Judgment issued by the clerk's office. Under the Tucker Act, 28 U.S.C. § 1491(b)(2) (2000), when deciding a post-award bid protest, the United States Court of Federal Claims is empowered to "award any relief that the court considers proper, including declaratory and injunctive relief except that any monetary relief shall be limited to bid preparation and proposal costs." The United States Court of Appeals for the Federal Circuit has held that "a losing competitor may recover the costs of preparing its unsuccessful proposal if it can establish that the Government's consideration of the proposals submitted was arbitrary or capricious." E.W. Bliss Co. v. United States, 77 F.3d 445, 447 (1996) (quoting Lincoln Servs., Ltd. v. United States, 230 Ct. Cl. 416, 678 F.2d 157, 158 (1982)); see also Gentex Corp. v. United States, 58 Fed. Cl. 634, 656 (2003) ("[A] losing competitor may recover the costs of preparing its unsuccessful proposal if it can establish that the Government's consideration of the proposal submitted was arbitrary or capricious or in violation of applicable statute or regulation."). In CNAC I, this court found that HHS "acted arbitrarily and capriciously when it found Dr. Friedman ineligible to participate as the Principal Investigator in a contract award to the plaintiff." CNAC I, Case No. 07-858C, Order at 3. This court also determined that CNAC is entitled to bid preparation costs. Id.

Following the court's January 3, 2008 Order, the Office of the Clerk of the United States Court of Federal Claims entered Judgment pursuant to RCFC 58. The defendant argues, therefore, that "this case is now closed" and asserts that the court does not have jurisdiction to make a quantum determination of damages. The defendant attempts to evade this court's award of bid preparation costs to the plaintiff as a consequence of the government's arbitrary and capricious behavior based on the issuance by the clerk's office of a document it titled "Judgment," which did not include a stated dollar amount for the bid preparation and proposal costs awarded by the court. The Judgment by the clerk's office, however, specifically stated: "plaintiff, CNA Corporation, is awarded bid preparation costs." Moreover, in this court's opinion in CNAC I, issued on January 3, 2008, the undersigned judge specifically "award[ed] the plaintiff CNA Corporation bid preparation costs."

In this regard, the United States Supreme Court has stated:

> [I]t is obvious that a final judgment for money must, at least, determine, or specify the means for determining, the amount . . . and an opinion . . . which does not either expressly or by reference determine the amount of money awarded reveals doubt, at the very least, whether the opinion was a "*complete* act of adjudication" . . . or was intended by the judge to be his [or her] final act in the case.

United States v. F. & M. Schaefer Brewing Co., 356 U.S. 227, 233-34 (1958) (quoting F. & M. Schaefer Brewing Co. v. United States, 236 F.2d 889, 891 (2d Cir. 1956)) (emphasis in original; internal citations omitted).

The United States Court of Appeals for the Federal Circuit has similarly held that "a judgment encompassing both liability and damages has been the prerequisite of appellate review." Teller Envtl. Sys., Inc. v. United States, 802 F.2d 1385, 1388 (Fed Cir. 1986). Furthermore, "[w]ithout a determination of damages, other circuit courts have consistently held that finality is lacking thus precluding appellate jurisdiction. . . ." Id. (citations omitted); see, e.g., Carolina Power and Light Co. v. Dynegy Mktg. and Trade, 415 F.3d 354, 358 (4th Cir. 2005) ("[A] judgment on liability that does not fix damages is not a final judgment because the assessment of damages is part of the merits of the claim that must be determined."); Freeman United Coal Mining Co. v. Director, Office of Workers' Comp. Programs, U.S. Dep't of Labor, 721 F.2d 629, 630 (7th Cir. 1983) ("If a federal district court . . . decides that the defendant is liable to the plaintiff, but has not yet determined the amount of damages, there is no 'final decision' within the meaning of 28 U.S.C. § 1291." (citations omitted)). "The label that a district court attaches to an order it issues does not control the question of whether the order is a final decision." Carolina Power and Light Co. v. Dynegy Mktg. and Trade, 415 F.3d at 358 (citations omitted).

According to RCFC 58, "Every judgment and amended judgment must be set forth on a separate document . . . ."[2] However, "the 'separate document' required by *Rule 58* can, but does not always, constitute a 'final judgment' of the court." Theriot v. ASW Well Serv., Inc., 951 F.2d 84, 87 (5th Cir. 1992); see also Enzo Biochem, Inc. v. Gen-Probe, Inc., 414 F.3d 1376, 1379-1380 (Fed. Cir.), vacated on other grounds (Fed. Cir. 2005). The United States Court of Appeals for the Federal Circuit has indicated that a decision is final when "nothing remains to be done." Enzo Biochem, Inc. v. Calgene, Inc., 188 F.3d 1362, 1377-1378 (Fed. Cir.) (quoting Trzcinski v. American Cas. Co., 901 F.2d 1429, 1431 (7th Cir. 1990)), reh'g and reh'g en banc denied, No. 98-1438 to 98-1479, 1999 U.S. App. LEXIS 34474 (Fed. Cir. Dec. 1, 1999); Teller Envtl. Sys., Inc. v. United States, 802 F.2d at 1388 ("[A] final decision is one which 'leaves nothing for the trial court to do but execute the judgment.'" (quoting Catlin v. United States, 324 U.S. 229, 233 (1945))). These cases are consistent with the definition in RCFC 54 of "Judgment" as a "decree and any order from which an appeal lies." Because a final judgment must "determine, or specify the means for determining, the amount" of damages to be awarded, United States v. F. & M. Schaefer Brewing Co., 356 U.S. at 233, when the court issued its January 3, 2008 Order there remained something to be done in the CNAC I case, the determination of the amount of bid preparation costs.

In the case currently before the court, finality was lacking, with the court still needing to set a dollar amount for bid preparation and proposal cost damages resulting from defendant's arbitrary and capricious behavior as found in CNAC I. Prior to the issuance of the decision in CNAC I, as is generally true in bid protests, the plaintiff had

[2] Because the language of RCFC 58 is similar to that of Rule 58 of the Federal Rules of Civil Procedure, this court refers to cases interpreting both rules.

not submitted a detailed breakdown of its bid preparation and proposal costs, or other costs. That submission is expected by the court only after success by a plaintiff in a bid protest suit. It would be a waste of time both for a plaintiff and for the court, as well as the opposing party, to require submission and review of a detailed cost statement prior to a determination of the merits of the bid protest. If plaintiff loses, bid preparation and proposal costs would never be an issue. It was always the intention of the court, and it is the normal course of events, that a detailed cost breakdown would be submitted following the issuance of the court's opinion on the bid protest. Issuance by the clerk's office of a document titled "Judgment" did not change that fact. Plaintiff proceeded properly by submitting an application for bid preparation and proposal costs, including a detailed cost breakdown, for review once the defendant withdrew its appeal from the reviewing court. Similarly, it would be an unproductive use of everyone's time to submit or review a detailed cost submission prior to resolution of the appeal, in this case filed by the defendant. Therefore, the court maintains jurisdiction to review CNAC's application for bid preparation and proposal costs and to review plaintiff's request regarding the quantum of damages to be awarded.

Alternatively, even if the Judgment that was entered by the clerk's office pursuant to RCFC 58 on January 7, 2008, for the sake of argument, were to be considered a "final" Judgment, CNAC's application for a quantum determination of bid preparation and proposal costs could still be reviewed by the court under the Rules of this court. The government, however, contends that CNAC's application for bid preparation and proposal costs "is nothing more than" a motion under RCFC 59,[3] and that because CNAC did not submit its application for bid preparation and proposal costs within 10 days after the Clerk of the Court entered Judgment, as required for motions under RCFC 59, CNAC is barred from any recovery. RCFC 59, titled "New Trials; Rehearings; Amendment of Judgments; Reconsideration," is primarily directed to relief from trial judgments. RCFC 59 allows the court to grant new trials, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions and, therefore, to amend the judgment. RCFC 60, titled "Relief from Judgment or Order," on the other hand, allows the court to offer relief in a broader range of activity, since it specifies relief from "judgments," "orders," "other parts of the record," or "proceeding[s]." If, as the government contends, the January 7, 2008 Judgment issued by the clerk's office had the effect of a "final" Judgment, RCFC 60, nonetheless, would

[3] The language of RCFC 59 ("New Trials; Rehearings; Amendment of Judgments; Reconsideration"), and RCFC 60, ("Relief from Judgment or Order"), are similar to the language of Rules 59 and 60 of the Federal Rules of Civil Procedure. The court, therefore, refers to cases that have interpreted both sets of rules. See Patton v. Sec'y of the Dep't of Health and Human Servs., 25 F.3d 1021, 1025 n.4 (Fed. Cir. 1994) ("RCFC 60 is a 'virtual duplicate' of the *Fed. R. Civ. P. 60*. . . . Therefore, we may rely on cases addressing *Fed. R. Civ. P. 60* and we shall refer to RCFC 60 throughout the opinion as '*Rule 60*.'" (emphasis in original; citations omitted)); Curtis v. United States, 61 Fed. Cl. 511, 512 n.2 (2004) ("Because the portions of *RCFC 60(b)* and *Rule 60(b) of the Federal Rules of Civil Procedure* relevant to this case are identical . . . the court looks to case law interpreting *Rule 60(b) of the Federal Rules of Civil Procedure* to interpret *RCFC 60(b)*." (citations omitted)).

provide a way for the court to relieve CNAC from the effects of such a Judgment, and allow the court to adjust the order to reflect a quantum determination of the bid preparation costs that were awarded in the court's January 3, 2008 Order and also specifically identified as awarded in the January 7, 2008 Judgment on which defendant relies.

RCFC 60(a) provides:

> Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders.

RCFC 60(b) provides:

> On motion and upon terms as are just, the court may relieve a party . . . from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence . . .; (3) fraud . . .; (4) the judgment is void; (5) the judgment has been satisfied . . .; (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken.

In determining whether a motion is properly classified under RCFC 60(a) or RCFC 60(b), the United States Court of Appeals for the Federal Circuit has stated:

> *Rule 60(a)* affords relief from minor clerical mistakes or errors arising from simple oversight or omission. *See* James W. Moore and Jo Deshap Lucas, *Moore's Federal Practice* ¶ 60.06[1] (2d ed. 1993); *see also* United States v. Bearly, 978 F.2d 696, 699 (Fed. Cir. 1992). It is intended to allow the judgment to "speak the truth," but not to substantially alter the rights of the parties thereto. *See* [11 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2854 (1973 & Supp. 1993)]. Errors of a more substantial nature are more appropriately correctable under subdivision [60] (b). *See* Moore, *supra*, ¶ 60.06[4].

Patton v. Sec'y of the Dep't of Health and Human Servs., 25 F.3d 1021, 1029 (Fed. Cir. 1994). The Court of Appeals for the Federal Circuit in Patton held that the plaintiff's motion was properly classified under Rule 60(b) rather than 60(a) because the special master failed to address pain and suffering and those damages were inadvertently not included. Id.

If this court were to evaluate CNAC's detailed submission of bid preparation costs under RCFC 60, it would properly do so under RCFC 60(b)[4] to allow quantification of the bid preparation costs specifically awarded to plaintiff in both the court's order in CNAC I and the subsequent Judgment issued by the clerk's office, although to do so would not "substantially alter the rights of the parties." Id. The United States Court of Appeals for the Federal Circuit has found that the act of balancing "all of the factors arising in a Rule 60(b) motion is committed to the sound discretion of the [trial] court." W.L. Gore & Assoc., Inc. v. C.R. Bard, Inc., 997 F.2d 558, 562 (Fed. Cir. 1992); see Curtis v. United States, 61 Fed. Cl. 511, 512 (2004) ("The court has discretion regarding whether to grant relief under *Rule 60(b)*, 'and the court may weigh equitable considerations in the exercise of its discretion.'" (quoting Dynacs Eng'g Co. v. United States, 48 Fed. Cl. 240, 241-42 (2000)). "As a remedial provision, *Rule 60(b)* is to be 'liberally construed for the purpose of doing substantial justice.'" Patton v. Sec'y of the Dep't of Health and Human Services, 25 F.3d at 1030 (quoting 7 James W. Moore and Jo Desha Lucas, Moore's Federal Practice, ¶¶ 60.18[8], 60.19 (2d ed. 1993)).

RCFC 60(b)(1) and 60(b)(6) allow this court to amend a judgment for "mistake," "inadvertence," "surprise," "excusable neglect," or for "any other reason justifying relief from the operation of the judgment." The mistake or inadvertence does not have to be on the part of the moving party. The inadvertence, surprise, or excusable neglect can be "of any party, party's attorney, the clerk, or the court." 12 Joseph T. McLaughlin and Thomas D. Rowe, Jr., Moore's Federal Practice § 60.41[3] (3rd ed. 2008) (citations omitted). "Under *Rule 60(b)(1)*, relief may be granted from 'judicial error' when inadvertence is shown and the motion is made within a reasonable time." Patton v. Sec'y of the Dep't of Health and Human Servs., 25 F.3d at 1030. Thus, a court's omission, for example, in the issuance of a Judgment, if it was in fact a mistake, prior to determination of an amount of quantum damages for bid preparation costs, provides a basis for relief to the plaintiff under RCFC 60(b)(1).

RCFC 60(b)(6) allows a court to relieve a party from a final order for "any other reason justifying relief from the operation of the judgment." This is commonly referred to as the "catch-all provision." See Fiskars, Inc. v. Hunt Mfg. Co., 279 F.3d 1378, 1382 (Fed. Cir. 2002); Moore's Federal Practice, supra at § 60.48[1]. "*Rule 60(b)(6)* is available only in extraordinary circumstances and only when the basis for relief does not fall within any of the other subsections of *Rule 60(b)*." Fiskars, Inc. v. Hunt Mfg. Co., 279 F.3d at 1382 (citing Marquip, Inc. v. Fosber America, Inc., 198 F.3d 1363, 1370 (Fed. Cir. 1999), reh'g denied (Fed. Cir. 2000); Provident Sav. Bank v. Popovich, 71 F.3d 696, 700 (7th Cir. 1995)). The United States Court of Appeals for the Federal Circuit and other jurisdictions, however, have not drawn bright lines to determine what constitutes "extraordinary circumstances." Fiskars, Inc. v. Hunt Mfg. Co., 279 F.3d at 1382. Generally, "[t]he cases seem to make [a] fault/no fault distinction the controlling factor in

---

[4] One of the differences between RCFC 60(a) and RCFC 60(b) is a difference in timing. RCFC 60(b) requires the motion to be filed "within a reasonable time" but "not more that one year after judgment . . . ." RCFC 60(a) on the other hand, allows the court to correct a mistake "at any time." CNAC's motion would be considered timely under either RCFC 60(a) or RCFC 60(b).

determining whether extraordinary circumstances will be found or not. In a vast majority of cases finding that extraordinary circumstances do exist so as to justify relief, the movant is completely without fault. . . ." Moore's Federal Practice, supra at § 60.48 [3][b]; see also Amado v. Microsoft Corp., 517 F.3d 1353, 1363 (Fed. Cir. 2008) (citing Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship, 507 U.S. 380, 393 (1993)). In the instant case, CNAC is without fault, and the circumstances of this case are sufficient to warrant relief to plaintiff, if the January 7, 2008 Judgment were to otherwise bar the court from reviewing plaintiff's quantum application for the bid preparation costs awarded to plaintiff by this court.

Rule 60(b) requires that the motion be submitted within a reasonable time and "for reasons (1), (2), and (3) [RCFC 60(b)(1)-(3)] not more than one year after the judgment, order, or proceeding was entered or taken." RCFC 60(b). CNAC submitted its detailed bid preparation and proposal costs statement on April 4, 2008, the day after the Federal Circuit dismissed the government's appeal of this court's award of an injunction and bid preparation costs in CNAC I. Therefore, the court finds that CNAC's application to determine quantum of the bid preparation costs previously awarded is timely and within the jurisdiction of this court to review whether pursuant to RCFC 60, or within the normal course of events in a bid protest case when bid preparation costs are awarded by the court.

The government also argues that even if this court has jurisdiction to hear CNAC's motion for a quantum determination of bid preparation and proposal costs, CNAC should not be entitled to an award because the court already granted injunctive relief and "a successful bid protestor may receive injunctive relief or bid preparation and proposal costs, but not both." (emphasis in original). The court found that Dr. Friedman had been improperly disqualified on the basis of post-employment restrictions as the CNAC proposed principal investigator in plaintiff's bid for a 2007 National Children's Study contract for Montgomery County, Maryland, and vacated the agency ethics decision. The court also awarded bid preparation costs. CNAC I, Case No. 07-858C, Order at 3.

The government also tries to extend its argument by maintaining that because CNAC has submitted a proposal in response to the 2008 RFP, CNAC "has been permitted to submit a proposal for the very contract award that was the subject of its first bid protest," and that if the court makes an award for damages, "CNAC essentially will have obtained a double-recovery in that it will receive both monetary relief and the opportunity to have its proposal considered (this time, under the 2008 RFP)." The 2007 RFP and the 2008 RFP, however, are separate actions, and no award has been made to date on the 2008 RFP. Moreover, the 2008 RFP is not a resolicitation of the 2007 RFP, nor technically did CNAC "resubmit its proposal." In fact, the 2008 solicitation was considered a new and separate solicitation by the defendant. When arguing that CNAC had no standing to bring its pre-award protest in CNAC II in this court, the defendant relied on the distinction between the solicitations. When addressing the issue of standing in CNAC II, defendant argued that although plaintiff had standing in CNAC I regarding the post-award 2007 solicitation, having submitted a proposal to the 2007

RFP, plaintiff did not have standing in CNAC II to protest the 2008 pre-solicitation, having not, at the time plaintiff brought its case in CNAC II, offered a proposal in response to the 2008 RFP.

This court is not convinced by the government's argument that CNAC cannot be entitled to injunctive relief and bid preparation costs. In asserting its argument, the government relies on Beta Analytics International, Inc. v. United States. The Beta Analytics opinion states:

> A reevaluation restores to a victim of arbitrary and capricious procurement activity its substantial chance to receive the contract award. Typically, this would also eliminate the basis for an award of bid preparation and proposal costs, as the investment in the proposal is no longer a "needless expense," Heyer Products [Co. v. United States], 135 Ct. Cl. [63,] 71, 140 F. Supp. 409 [1956], and the bidder may yet see the fulfillment of the promise of "fair and impartial consideration" which "induced it to spend its money to prepare its bid." Id. at 69, 140 F. Supp. 409. But when, as here, performance of a contract has begun, or reevaluation is not otherwise practical, bid preparation and proposal costs should be awarded. *See, e.g.,* CSE Constr. Co. v. United States, 58 Fed. Cl. 230, 263 (2003); Dynacs Eng'g Co. v. United States, 48 Fed. Cl. 614, 620-21 (2001); MVM, Inc. v. United States, 47 Fed. Cl. 361, 366-67 (2000).

Beta Analytics Int'l, Inc. v. United States, 75 Fed. Cl. 155, 159 (2007).

The Beta Analytics case is not fully instructive regarding the facts presented by the bid preparation cost award to CNAC in CNAC I. The Beta Analytics case addressed reevaluation of the offers made on the same solicitation which generated the bid protest. Id. In this regard, the court in Beta Analytics indicated that when performance has begun or reevaluation is not feasible, bid preparation costs are appropriate for award. Id.

The injunction issued by the court in CNAC I afforded plaintiff only a portion of the relief it sought, even though the government had acknowledged that CNAC would have received a 2007 award for Montgomery County, Maryland, save only the agency ethics decision. The court did not, as requested by plaintiff, direct HHS/NIH to award the Montgomery County, Maryland study contract to CNAC or to resolicit the contract. CNAC lost its opportunity for award, and was not given a "fair and impartial consideration" on the 2007 bidding. Id. Moreover, the court notes that according to the March 18, 2008, revised ethics decision signed by Mr. Swindell, all indications are that Dr. Friedman will be found ineligible to participate in the 2008 contract award, thus, once again, eliminating CNAC from the competition.

The 2007 solicitation contract awards were made in October 2007, effective September 28, 2007. The 2008 solicitation was issued later as a separate contract solicitation. CNAC has made a separate and new offer pursuant to the 2008 solicitation.

According to the government, the award of the 2008 contract is not slated to be made until the Fall of 2008, approximately one full year later, representing harm to CNAC by a distinct loss of potential earnings. Even if CNAC were to be successful on the 2008 solicitation, that loss could not be recovered.

Furthermore, this court has discretion to fashion awards that include a mixture of injunctive relief and bid preparation and proposal costs. The responsibility and discretion afforded to the court has been amended and broadened since this court's protest jurisdiction was defined earlier in the Tucker Act, 28 U.S.C. § 1491 (1994). The most sweeping changes came when Congress passed the Administrative Dispute Resolution Act of 1996 (ADRA), Pub. L. No. 104-320, 110 Stat. 3870 (1996). The ADRA expanded the Tucker Act to provide the United States Court of Federal Claims and United States District Courts concurrent jurisdiction to hear bid protests, and it gave both courts discretion to fashion appropriate awards. 28 U.S.C. § 1491(b)(1)-(2) (2000). The ADRA stated: "To afford relief in such an action, the courts may award any relief that the court considers proper, including declaratory and injunctive relief except that any monetary relief shall be limited to bid preparation and proposal costs." Pub. L. No. 104-320, §12(a), 110 Stat. 3870, 3974. The ADRA also contained a sunset provision by which the district courts' jurisdiction over bid protest cases expired on January 1, 2001, leaving the United States Court of Federal Claims with sole jurisdiction to review both pre- and post-award bid protests. Pub. L. No. 104-320, § 12(d), 110 Stat. 3870, 3875; see Emery Worldwide Airlines, Inc. v. United States, 264 F.3d 1071, 1079 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2001).

The court's discretion in fashioning awards for bid protest cases remains broad pursuant to the amended version of the Tucker Act, "[T]he courts may award any relief that the court considers proper, including declaratory and injunctive relief except that any monetary relief shall be limited to bid preparation and proposal costs." 28 U.S.C. § 1491(b)(2) (emphasis added); see PGBA, LLC v. United States, 389 F.3d 1219, 1226 (Fed. Cir. 2004) ("[T]he language of 28 U.S.C § 1491(b)(2), which, through the use of the permissive 'may,' provides the Court of Federal Claims with discretion in fashioning relief."); see also MVM, Inc. v. United States, 47 Fed. Cl. 361, 366 (2000) ("[T]he plain language of 28 U.S.C. § 1491(b)(2) permits the grant of proposal and preparation costs as well as injunctive relief. The statute contains no condition that if injunctive relief has already been granted, monetary damages are not available."). This is particularly true when the injunctive relief issued in CNAC I was partial, neither setting aside the 2007 awards nor ordering resolicitation or reassessment of the 2007 solicitation.

Multiple judges of this court have fashioned awards which include both injunctive relief and bid preparation and proposal costs on a number of occasions. For example, when an injunction issued by the court was partial and only set aside part of the contract in question, Judge Lettow found it appropriate to include bid preparation and proposal costs as part of the award. Geo-Seis Helicopters, Inc. v. United States, 77 Fed. Cl. 633, 650 (2007). Other cases also have awarded complete, permanent injunctive relief along with bid preparation and proposal costs. See United Payors & United Providers Health Servs., Inc. v. United States, 55 Fed. Cl. 323, 334 (2002) (in which Judge Margolis

required the defendant to terminate the contract, allowed resolicitation of bids, and awarded bid preparation and proposal costs to the plaintiff); MVM, Inc. v. United States, 47 Fed. Cl. at 366 (in which Chief Judge Damich awarded "proposal and preparation costs" in addition to the injunction he had previously awarded); Seattle Sec. Servs. v. United States, 45 Fed. Cl. 560, 573 (2000) (in which Judge Allegra awarded injunctive relief and bid preparation costs).

The court acknowledges that the court might exercise its discretion not to award both injunctive relief and bid preparation and proposal costs depending on the facts and circumstances of the particular case. The court notes, for example, that in Grumman Data Systems Corporation v. United States, 28 Fed. Cl. 803, 809 (1993), the court wrote: "it is appropriate that protestors have the opportunity to obtain either legal or equitable relief, but not both." Grumman, however, involved two separate judicial proceedings, in two separate courts. Id. at 806-07. The plaintiff had obtained a full injunction in district court that required the defendant to set aside a contract award and to resolicit the contract in question. Id. at 806. The plaintiff later filed a suit in this court seeking an award of bid preparation and proposal costs. Id. at 806-807. In the present case, both injunctive relief and damages were awarded by the same court, at the same time, as part of the award fashioned by the court.

The government has acknowledged in litigation before this court that CNAC had been recommended for an award for the Montgomery County study contract, pursuant to the 2007 solicitation, but for the disqualification of Dr. Friedman as the proposed principal investigator for CNAC. Therefore, but for the arbitrarily and capriciously issued ethics decision, CNAC currently would have been working on the 2007 contract since early Fall of 2007. The court has found that the government acted arbitrarily and capriciously with respect to actions it took to exclude Dr. Friedman and CNAC from the 2007 competition, but the 2007 contract awards were allowed to remain in place, as the agency requested. Because CNAC was not allowed to compete and obtain an award in the 2007 competition, CNAC has suffered financial losses. Bid preparation and proposal costs can be awarded by courts as an appropriate way to try to compensate, at least in part, a victim of unjust government action during the procurement process.

The government also argues that if the court finds in favor of CNAC, the court should allow CNAC to "recoup only the additional costs it incurred (to update its 2007 proposal)" for its submission in response to the 2008 RFP. In essence, the government asks the court to consider an offset to the award by factoring in overlapping costs between the previously failed bid for the 2007 contract and the bid offered by CNAC for a possible 2008 contract. This deductive mathematics, acknowledging only additional costs, might apply to a successful bid protest on the 2008 solicitation, but is not dispositive on the 2007 (CNAC I) case. A contractor which might benefit from its expenses on a prior submission is not normally penalized for its experience when proposing on a later RFP.

Despite the court's finding that HHS acted arbitrarily and capriciously during the solicitation and award proceedings and the award to CNAC of bid preparation and

proposal costs in CNAC I, the government chose not to contest the computation or extensive substantiation offered by CNAC for the proposed bid preparation and proposal costs plaintiff claimed. Rather, defendant has chosen to move to strike the entire application. In fact, CNAC submitted hundreds of pages documenting and outlining its bid preparation and proposal costs. This documentation may be sufficient to establish a quantum damage award. See, e.g, Beta Analytics Int'l, Inc. v. United States, 75 Fed. Cl. at 164 (holding that documents describing the work performed by each employee, identifying the number of hours worked, and outlining the burdened hourly rates of each employee are the types of information used to quantify the bid proposal and submission costs). The costs must be reasonable and allocable to bid preparation, however, defendant in the present case offered no opposition to CNAC's documentation. See 48 C.F.R. § 31.205-18(c) (2007); Beta Analytics Int'l, Inc. v. United States, 75 Fed. Cl. at 159; Lion Raisins, Inc. v. United States, 52 Fed. Cl. 629, 630-631 (2002).

To date, this court has been provided no reason to believe that the costs claimed by the plaintiff are not reasonable and allocable to the preparation of CNAC's proposal for the 2007 solicitation. Nonetheless, out of an abundance of caution, the court will afford the defendant another opportunity to review the documentation submitted by plaintiff to support its claim for bid preparation and proposal costs. The parties are urged to consult with each other to try to agree on an appropriate dollar figure for bid preparation and proposal costs. In the event that the parties cannot agree, on or before Friday, August 22, 2008, the defendant shall file a detailed response to the application costs claimed by plaintiff. If defendant has no objections to plaintiff's application for bid preparation and proposal costs, it shall so indicate to the court in writing, also on or before Friday, August 22, 2008.

## CONCLUSION

For the foregoing reasons, defendant's motion to strike plaintiff's application for bid preparation and proposal costs is denied.

**IT IS SO ORDERED.**

s/ Marian Blank Horn
**MARIAN BLANK HORN**
**Judge**